Good morning, Your Honors. Jonathan Stieglitz for Appellant Healthcare Ally Management of California LLC. Thank you, Your Honors, for allowing us to give oral argument here today. Before I begin, I'd like to reserve three minutes for rebuttal, if I may. You'll watch your time. I'll try to help you, but you're responsible for that, okay? Thank you, Your Honor. May it please the Court. The issue before the Court is with respect to the specific personal jurisdiction of Appellee Blue Cross Blue Shield of Minnesota. There's two ways in which it's evident that Blue Cross Blue Shield of Minnesota is subject to specific personal jurisdiction in California. One is their provision of insurance in California or insurance-related services, and the second is the phone calls, which were the direct and only basis for why the medical providers in this case provided the surgeries to these patients. Let me go to those phone calls because I've got a question about them. You're here, Ally is here as the S&E of the claims of the healthcare providers, correct? Correct. We work hand-in-hand with the providers. But you don't really work hand-in-hand. You get standing to sue because they've assigned their claims to you, correct? True, and I communicate with them regularly. I understand, but you're an S&E. Correct. Are you not? Okay. The health, every contact that the healthcare providers had with Blue Cross Blue Shield of Minnesota, it's a long, let's just call them Blue Cross for the moment, were initiated by the healthcare providers, were they not? They were initiated by the healthcare providers. So in each case, the healthcare provider called Blue Cross and said, will you cover this patient? It was more extensive than that, but yes. Okay, but I mean, that was the purpose of the call. Correct. Isn't the case law rather clear that when the party seeking to invoke personal jurisdiction institutes the contact with an out-of-state entity, that doesn't count as purposeful availment? No, your honor. I mean, there's- There might be a case in which the local person instituted the contact with the out-of-state person and that was treated as Sure, there's Roth versus Garcia Marquez. Mr. Roth engaged with Mr. Marquez in, I think it was in Mexico City. He was the one who reached out to him. And then what did Mr. Marquez do thereafter? Thereafter, Mr. Marquez, all communications- But didn't Mr. Marquez provide a service thereafter or do something thereafter? Everything was out of the state of California. See, in this case, it's hard for me to see how Blue Cross purposely availed itself of the privilege of doing business in California when you called them and said, will you cover these patients? And they either answered yes or no, depending on what facts you believe. Well, this isn't out- I think that's very important, your honor. So there's- This is an out-of-network doctor. These are out-of-network doctors. No, I understand. So they have no contract with Blue Cross Blue Shield of Minnesota. They have no other relationship with Blue Cross Blue Shield of Minnesota. So what they're trying to do is, they're trying to communicate with Blue Cross Blue Shield of Minnesota to say, hey, we have this patient. If you are going to pay for the services, we will provide the services. If you are not going to, let us know and we'll do something different. I understand all that. My question is, didn't they institute the contact as opposed to Blue Cross Blue Shield of Minnesota? Yes, your honor. But just like in Roth versus Garcia Marquez, just because you initiate the contact, that doesn't mean that- If you initiate the contact and there is- Let me make the question so you can try to respond to it differently. Sure. If you initiate the contact and there is no further action after the contact by the contacted party, does that constitute purposeful availment? I think so, your honor. I think- And you think Roth stands for that proposition? I think Roth stands for that proposition because if you- again, if- but that's the contact directly led to the procedure being provided. That's the key point. It's a very binary thing. Let's talk about Roth for a second. You've cited it here today. You cited it quite a lot in your brief. This court commented that Roth, number one, was a, quote, very close call. Yes, your honor. In the alleged contract there, was it not more substantial than the commitments allegedly made by Blue Cross here? Let me add one more sentence to that question for you. In Roth, the movie would be filmed in California. Here, payment would be made for a surgery performed in California. No, your honor. The film was not going to be filmed in California. It explicitly states in the- I mean, in the background of the case, it specifically states that one of the conditions that Mr. Marquez laid out was that the film would absolutely not be provided and done in California. It was going to be done by a Latin filmmaker, and it was going to be- it would have to be done- Where? Originally, it was going to be Columbia, and then they agreed to be Brazil. Never was it going to be done in California. That's in the record. Yes. I guess- let me just ask you, I mean, how do you reconcile the Supreme Court's decision in Bristol-Myers with your argument, I guess, that because Blue Cross Minnesota insures in California, there are enough contacts with California? It seems like the court was pretty clear in that case that the defendant's general connections with the form aren't enough. And so, I guess more specifically, don't we have to focus only on the contacts with the form that have a connection to the controversy here? Agreed, your honor. And that was the confusion, I think, in Blue Cross Blue Shield of Minnesota's is in their reference to- is in their misunderstanding of what specific jurisdiction means. Specific jurisdiction has two forms. Specific jurisdiction has the form of continuous and systematic activity, which led to the issue in suit. That's specific jurisdiction. You're not arguing general jurisdiction. I'm not, your honor. Okay. I'm saying that's one form of specific jurisdiction. Why aren't you arguing general jurisdiction here? Because I don't think that they have general jurisdiction. In order to have general jurisdiction, they would have to have a form. And so, I don't think that's the case. And because they don't have general jurisdiction, why are there contacts with the insureds relevant to this case? In other words, you're not making a claim on behalf of the insureds. You're making a claim on behalf of the providers. If there were no insurance, if the patient did not have an insurance card, which had an emblem, which has Blue Cross Blue Shield of Minnesota on it, which was then handed to the doctor, then there would be no procedure. But your claim against them doesn't arise out of their contacts with these insureds. If these insureds, you know, it doesn't really matter where the insureds lived for purposes of this. They came to you for services. Yes, your honor. It's that, look, there's two forms of specific jurisdiction. I think that's very important, is that to not be confused to say, well, specific jurisdiction just has to be the single occasion or episode in suit. It has to be, sorry, the single occasion or specific act. That's more the calls. That's more that. But when you're talking about the provision of insurance, that's what they do here in California. They provide insurance to Medtronic, to St. Jude. We haven't gotten into this, but as a practical matter, for most of these patients, they don't provide insurance at all. They just administer claims, correct? They are the claims administrator, which means... So does that mean that they're providing... So to the extent you're relying on the notion that they provide insurance, they don't do so with respect to all but, what, one or two of the patients? Your honor, just like in Hirsch, just like in Hirsch, both here and in Hirsch, a blue card... Who are the claimants in Hirsch? The claimant in Hirsch was the patient. Right. You're not the patient. You're the provider, correct? Yes, your honor. But again, it's that the, it's that the, again, that's what you have to go back to that first form of specific jurisdiction, which is that the continuous and systematic activity, which they absolutely do have here in California, relating to insurance related services, whether that be claims administrative services, or whether it be actual provision of insurance. You know, when you're talking... Well, you're not really claiming they have continuous act... With respect to insurance? Yes. Absolutely, your honor. So then you're claiming general jurisdiction? No, your honor. That's specific jurisdiction. Okay, now let me ask you a factual question, because I'm not clear about this from the record. Are each of the claims in this case based on one phone call? Each claim is based off of, well, we only have, I mean, there may be more, are there more phone calls? And there's also... No, I mean, there's a record. So tell me what's in the record. There are, there are, there are... Let me finish, let me finish. It's not a fast-talking... Sorry, I was trying to... Your client calls Blue Cross Blue Shield and says, will you cover these services? Yes, your honor. And there's a dispute about whether they said yes or no. We can worry about that later. Are there any subsequent calls or communications other than that? There are other letters and communications, yes. Sent from you to them? From them to us and vice versa, yes. But are those subsequent ones about the dispute that later occurs, or are they about the initial claim that they were... The submission of the bill, there may be... Right, so I understand there may be lots of letters once you start fighting about whether they should cover it. My question is, the contacts that you say led you to perform these surgeries... You're saying specifically with relation to the call, with relation to the initial reliance... Right. Element. We perform these surgeries because you told us that you would cover it. Is that just one phone call in each case? Yes, your honor. But I want to point... No, that's all... I understand, but I want to... Before I... And I just wanted to... I mean, because I know I'm probably going to get taken off. But before I wanted to just mention one quick thing, which was that in every case, in every district court case, this has never been decided in the Ninth Circuit, but in every district court case that's addressed this promissory estoppel, oral contract, cause of action, they've all found, they've all found that that would rise to the level of a cause of action. Whether... Well, I don't doubt that it's a cause of action. I don't doubt that if they told you they would cover, you have a claim against them. The question is, what state do you have to bring the claim in? Well, the district court didn't even have an issue, didn't have an issue with respect to, as a matter of jurisdiction necessarily, an issue with respect to the jurisdiction with respect to the calls. The court, district court didn't cite to any of the cases that Blue Cross Blue Shield of Minnesota cited. The district court's opinion was that it didn't, just didn't believe that the calls would rise to the level of a cause of action. But it dismissed for absence of personal jurisdiction. It did, Your Honor, but it didn't, but it was, but the analysis was not, it didn't cite to any case law in support of an absence of personal jurisdiction. It simply said, well, we don't think this rises to the level of a promise. I know you're out of time, but I'm going to extend it just because I have a question here that I'd like for you to answer. As I understand the nature of your claim under the California unfair competition law is a business tort claim. Is that right? So there's a, so that's for the emergency room claim. So there's a... But is that just, yes, is that what, it's a business tort claim? It's a business tort claim. Okay. So that seems very similar to the claim asserted in Hunt by the third party beneficiary of the insurance policy and the ninth circuit value of that claim under a purposeful availment theory. So I'm trying to figure out why should tort cases control our jurisdictional analysis for your UCL camp claim in light of Hunt? I mean, and... Well, well, Hunt, Hunt is very different from our facts. Hunt was a, there was a car accident. How is it different? Hunt was a car accident in a different state. And then the patient, and then the insured moved to California. So nothing actually happened in California. Just the patient, just the insured moved to California. Whereas in our case, everything occurs in California. All of the medical services are performed in California. So that's how I distinguish the two. Okay. Thank you. I have one question. This requires a yes, a no, or an I don't know. Okay, yes. Please. Does your complaint disavow reliance on the patient insurance contracts for purposes of the merits? I would like to answer yes, no, or I don't know, but it's, it's, it does not, we are not based, we are not making a claim based on the assignment from the patient. If that's, and I guess, and I hope that answers your question. Thank you. I'm sorry, on Hunt though, I know that in that case, because you said it's very different. I guess what I'm drawing on the similarity is the insurer had virtually no presence in California where the plaintiff resided, but it did mail her a denial of benefits letter into the case. And the court there held that the federal district court in California lacked jurisdiction over the insurer and established that unlawful failure to pay insurance benefits in the state, even though the letter mailed into the state does not subject the defendant to the state's jurisdiction. So I guess I'm just trying to figure out. I think the key inquiry, Your Honor, and it's the same thing. It's the same principle with, it's the main principle with respect to the cause. The key inquiry in all of these cases is where did the actual events occur? So the denial letter is with respect to an accident that occurred in a different state. That's the integral portion is where did the accident occur? Here, the medical procedures occur here. And so that's the reason why, and I think that's the analysis in Pickott. That's the analysis in Roth versus Garcia Marquez. Well, actually, it's not so much there. Actually, it's a weaker case in Roth versus Garcia Marquez, because as we discussed, the films were done and were going to be shot in a completely different place. Just the editing was going to take place in California. But that's the key point. But isn't it a little different than Garcia Marquez? And I know we're over time, but in Garcia Marquez, the contract was ultimately going to be performed in California. My film was going to take place here. No, it was not going to be shot here. Yes, it was. The court says so. No, Your Honor, it was going to be shot in either Brazil or Mexico City. But doesn't the court say the future consequences of the contract would be that activity? The editing of the film. What would have occurred in California in your case other than you mailing a check, them mailing a check to you? A medical procedure, Your Honor. You're not, I'm asking a separate question. What would they have done in California other than mail a check to you at a location? What would Mr. Marquez have done in California at all? See if you can answer the question I'm asking you rather than the one you wish I was asking you. Okay. What would you have done in California other than mail a check to these folks? Well, we don't mail. What would that Blue Cross have done other than mail a check to you? What would they have done other than mail a check? They provided assurance that a check would be paid or that services would be covered. Isn't the answer to my, it may not kill your case, but at least try to answer my question. But I don't, but I don't think it's true. All you're claiming is that they should have mailed a check in reimbursement for the surgery to your clients, correct? You're saying once the call took place. Yes. Once the call took place. I'm sorry. Yes. After everything was said and done. Yes. Okay. Thank you. Does Roth hurt your case, your argument? Can you address that please? State your parents first. If you don't mind, Your Honor. I'm Joel Mincer, and I'm here on behalf of the defendant, Appley Blue Cross of Minnesota. Does Roth hurt our case? No. Well, it doesn't help your case. So tell us why it doesn't hurt your case. Well, I mean, most importantly, Roth was decided before this whole grouping of Supreme Court cases. In Roth, what the court was looking at was all these contacts that the plaintiff had in California. And the main teaching of Walden versus Fiori is that specific jurisdiction depends upon the relationship of the defendant, the forum state, and the litigation. So is Roth no longer good law in your view? I don't think it is. I don't think it is. Assume it's good law just for purposes of discussion. Okay. If it's good law for purposes of our discussion, does it control? Can you distinguish it? No. There were activities that were... Under the facts of Roth, after the enter of the contract, there was going to be continued actions of a large systemic nature by the defendant afterwards. That's not the case here. The only act done after the alleged contract, and we'll get to that, is a single medical service. It was not systemic or continuous with respect to the acts that are relevant to the litigation. What the defendant was supposed to do, Blue Cross, in this case, according to the purported contract, was pay the providers for the services, correct? That's what they want us to do, yes. That's right. They say that you agreed to pay for the services. What else would you have done in California if this contract existed? Nothing. Would you... I take it you weren't going to come to California to pay them, were you? We weren't coming to California, right? When you cover people for services in California, you mail a check? We're a Minnesota company based in Minnesota. We determined the claim in Minnesota. So does the mailing of the check into California, which is a purposeful act by your client, would be a purposeful act by your client? Is that the kind of contact that would give rise to specific jurisdiction? I mean, it's funny to think that mailing a check, making a payment, is an act of veiling of a jurisdiction. Their complaint isn't about the mailing of a check. No, they're complaining that you didn't mail a check or that you mailed one for out of services or whatever. So the decision about what size of a check is made in Minnesota. It's not made in California. So all the wrongful conduct that's alleged would have occurred in Minnesota, not in California. Let me ask you, if based on the transcripts of the calls that were made, we find that Blue Cross Blue Shield of Minnesota promised Lapeer that it would pay for the medical costs, is there a specific jurisdiction? There might be, Your Honor, right? If any phone call, even if initiated from California to Minnesota, if during the content of that call, Minnesota reached back out and said, Lapeer, please, we want you to provide this service for the patient. Okay, that could be considered a reaching out to the forum. But that's not what happened. But isn't that what they claim happened? Ah, that's what they plead. But that's not actually what's in the content of the phone calls. As Judge Gee found, and it's actually not disputed, when you look at the content of the phone calls, there was no promise to pay. There was no request that the providers actually performed the services. And because there was no reaching out by Blue Cross in the phone call, Blue Cross on the phone call was purely passive. It was responding to questions, and that was it. Well, I read the transcripts of the calls between Lapeer and Blue Cross Blue Shield, and I'm still not sure that this was not a promise to pay here. I understand there's a disclaimer that Lapeer employees heard prior to the calls. But you also, I don't think, dispute that Blue Cross Blue Shield told Lapeer over the phone that no pre-authorization was required for seven of the eight patients that Lapeer treated. And it looks like the Blue Cross Blue Shield representatives appear to be saying that the to those employees would cover the medical costs. I guess I'm trying to figure out how is that not a promise to pay? Well, first, prior authorization is not itself a promise to pay. Prior authorization is something that deals with whether something is medically necessary or not. An insurer doesn't require that they authorize every procedure before a doctor does it. Doctors sometimes, and most of the time, actually almost all the time, they make their own decision about whether it's medically necessary. When Blue Cross says no prior authorization is needed, it's just saying it's for the provider to make the decision about medical necessity. It is not making a promise to pay. It is just saying it's not saying we are not deciding medical necessity in advance. And so are you relying on a pre-authorization on a definition and a pre-authorization or a reasonable understanding of pre-authorization? Because I think most people understand if you're gotten pre-authorization that they interpret that as that that's going to be paid. Especially, I think, if we look at these facts and the light most favorable to healthcare ally at this stage. So first, let's talk about what's in the record and then I'll try to answer more broadly. Plaintiff said that he wanted to produce expert evidence to show that pre-authorization has some special meaning. He never actually presented that evidence. If he were to believe that the statement that pre-authorization is not needed is a promise to pay, he should have presented evidence and he never did. So if I can just go outside the record for a moment. In the patient contracts, there is language that defines what is prior authorization. There's also a footnote that we put into our brief with the definition from CMS. And there, even in the governmental definition, it says pre-authorization is not a promise to pay. They did allege that they understood it to be a promise to pay, correct? I don't believe they allege that. So that's not alleged in the complaint. Is that an implicit reading of their complaint that they entered into a contract with you to pay? I don't think so. The way I read their complaint was that Blue Cross asked them to perform the service. And that just isn't in there. I don't think there's any evidence in these phone calls that they asked them to go ahead and do the surgery. Exactly. But I think one could read the complaint broadly as saying, you told us if we did the surgery, you would pay for it. But it's not the complaint that matters, right? It's not the pleading that matters. Because you went to a factual... Right. ...on a 12B2 motion. And that evidence contradicts the pleading. Judge Gief found, and there's actually not a dispute, that the content of the actual phone calls does not contain a promise to pay. If it did, though, your view is that there would be personal jurisdiction. Depends upon how it's worded, right? I thought you said, look, you know, if there were a promise to pay, let's just... We promise to pay. That's the wording. So you don't get to make up other wording. Would there be personal jurisdiction? Probably not. Because there's still the issue of pay how much. And there's not necessarily a promise as to that. Okay. But let's assume we promised to pay the amount that you are now claiming, Ally, was promised to us. Then there may be. Would there then be personal jurisdiction? Yes. For the one patient that Blue Cross Blue Shield insured directly, um, the patient that lived in Minnesota and later moved to California, did this patient receive medical services or, uh, in California when he or she was a California resident, was still insured by Blue Cross Blue Shield? So at the time that she received services from Lapeer, she was insured by Blue Cross. So she did receive medical services in California. Certainly at Lapeer, yes. And she was a California resident and still insured by Blue Cross Blue Shield. She had obtained insurance while a Minnesota resident. After she obtained the insurance, she moved to California. Under Minnesota law, Blue Cross Minnesota was required to continue that contract to renew it. So why isn't that enough to comply with the law? For specific jurisdiction, especially it seems like this is very similar to the fact pattern in Hirsch. There's no voluntary conduct by Blue Cross with respect to that patient because Blue Cross didn't have a choice as to whether to insure her or not. You did pay on that patient and out of network. So the question was, were we required to insure her? No, I understand. Right. I'm trying to figure out what your conduct, what your voluntary conduct wasn't. Well, because we were required to insure her, we were then required to apply the terms of the health insurance contract and cover her for those services in California. That's not an answer to my question. With respect to that patient, you paid the out-of-network cost, right? We paid the out-of-network fee, yes. Out-of-network fee. And what they're saying is that you agreed instead to pay the in-network fee. That's not what the transcript actually says. I understand, but that's what they're saying. So my question is, really, in the end, your argument must rest on the fact that the contract that they claim was formed really wasn't formed because you produced evidence that it wasn't formed. That is one part of our argument. Absolutely. So to answer Judge McGee, to go back to Judge McGee's question, let's assume that the patient at Lapeer sued you. You refused to cover her for anything. And she said, I should be covered for at least out-of-network costs or maybe for in-network costs. Would there be personal jurisdiction in that case? So I just want to be clear about which patient we're talking about. Well, the one that Judge McGee described. The one that lived in Minnesota. Who's directly insured and who resides in California. There may be. There may be. For the patient who's a dependent on a Minnesota policy, I would say there's not. Because that was a contract relationship purely in Minnesota. You know, when we're forced by Minnesota to renew a policy in California, when we don't want to be in California, I'm not really sure what the rules are going to be. So at the end, you're resting on these transcripts? As to the phone calls, yes. Right. That's one of the bases of plaintiff's claim for jurisdiction. Thank you very much. For the reasons stated, right, there's no connection between the defendant, the form, and the litigation. We ask that the court affirm. You went well over time, but I'll give you one minute. I'll be very brief. I think it's, I think just to sort of, because the court was pointed in terms of where it was going. With respect to the phone calls, the court was, and asked my friend here, whether or not, if it was a promise in the transcript, or if it was an assurance in the transcript, would he admit that there was specific jurisdiction? He said yes. He then changed his mind to no, but then he changed it back to maybe yes. I don't, and I don't really care what his view was. Exactly. So tell me where the promise in the transcript is. So the point is, is that if you have an expert, if you have expertise, well, all, as we just, as I mentioned, all those cases, those are the communications. That's the verification. It's not just a pre-authorization. It's a verification. They ask, what's the payment rate? They're told, usual and customary. Usual and customary is a payment rate that's used throughout the industry. It's used by UnitedHealthcare. It's used by Blue Cross of California. It's used by Cigna. It's used by HealthNet. They all use that term of art, UCR, or customary and reasonable. There's a data source, which all the industry uses, called FairHealth. That's the information that my client, well, no, well, that's the information the medical provider, Lapierre, obtained. They got all that information. They knew what the payment rate was, and that's why they went and performed the procedure. That's a promise. That's an assurance. And they were able to rely on it. Your position is that your clients understood, and we have the transcripts, so we can read them, your clients understood the transcripts to be a promise to pay. When they, an assurance, an assurance. Yes. Yes. And I think when all inferences are drawn in their favor, without the benefit of evidentiary hearing or without the benefit of further discovery, I think the court, I humbly request the court reverse. Thank you. Thank you very much. Mr. Stieglitz and Mr. Minster, appreciate your presentations. The case of Healthcare Ally Management of California v. Blue Cross Blue Shield of Minnesota is now submitted.
judges: Murguia, Hurwitz, Zouhary